UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Case No. 10-cv-40016-TSH

_____
                                                    )
MAURICIO PORCAL,                                    )
        Plaintiff,                                  )
                                                    )
v.                                                  )
                                                    )
LINA CIUFFO, GUSTAVO EBOLI,                         )
LINA CIUFFO CONSTRUCTION CORPORATION and )
G.E. CONSTRUCTION, INC.,                            )
        Defendants.                                 )
_____)

### PORCAL'S REQUESTS FOR FINDINGS OF FACT AND RULINGS OF LAW

NOW COMES the Plaintiff Mauricio Porcal ("Porcal") and requests the Court find the

following facts and make the following rulings of law regarding the above-captioned matter and

regarding Porcal's Verified Complaint against the Defendants Lina Ciuffo ("Ciuffo"), Gustavo

Eboli ("Eboli"), Lina Ciuffo Construction Corporation ("Ciuffo Construction") and G.E.

Construction, Inc. ("GE Construction").

### FINDINGS OF FACT

**I.      Defendants As "Employers"**

1.     Defendant Ciuffo Construction is a Massachusetts corporation.

2.     Defendant GE Construction is a Massachusetts corporation.

3.     Defendant Ciuffo Construction regulates the employment of all persons employed by them

       and acts, directly or indirectly, in Ciuffo Construction's interests with respect to those

       employees.

4.     Defendant Ciuffo, residing within the jurisdiction of this court, is an owner, officer, or

       director of Ciuffo Construction, actively controls and manages Ciuffo Construction by

regulating the employment of its personnel, exercises control over the day-to-day management of Ciuffo Construction, and otherwise acts directly or indirectly in the interests of Ciuffo Construction in relation to its employees.

5.  Defendant Eboli, residing within the jurisdiction of this court, is an owner, officer, or director of Ciuffo Construction, actively controls and manages Ciuffo Construction by regulating the employment of its personnel, exercises control over the day-to-day management of Ciuffo Construction, and otherwise acts directly or indirectly in the interests of Ciuffo Construction in relation to its employees.

6.  Porcal was employed by Ciuffo Construction at various times between at least 2004 and 2008.

7.  As the sole owners, officers, directors, and shareholders of Ciuffo Construction and the individuals responsible for the day-to-day operations of Ciuffo Construction including, but not limited to, the hiring and firing of employees, directing employees when and where to report for work, directing and supervising the activities of the employees, determining the wage rates and wages to be paid to employees, and otherwise acting in the interest of Ciuffo Construction, both Ciuffo and Eboli, individually, were Porcal's employers.

8.  Defendants employed Porcal in commerce, as defined by 29 U.S.C. § 203(b).

## II.    Nature Of The Business

9.  Ciuffo Construction is a construction company which primarily operates as a subcontractor on various public works construction projects throughout Massachusetts.   Ciuffo Construction's primary business is the raising and adjustment of sewer plates, catch basins, water gates, gas gates, and similar structures embedded in paved public streets, roads and highways on behalf of general contractors who are paving, repaving, or repairing public

streets, roads and highways for various cities, towns, political subdivisions, departments, or agencies of the Commonwealth Of Massachusetts.

10.  Ciuffo Construction worked on public works construction projects throughout the Commonwealth Of Massachusetts.  Evidence before the court demonstrates Ciuffo Construction assigned Porcal to work on public construction projects in cities and towns which included, but are not limited to, Quincy, Waltham, Boston, Somerville, Lunenburg, Phillipston, Templeton, Melrose, Saugus, Billerica, Worcester, Peabody, Braintree, Milton, Hopkington, and Chelmsford, among others, and, on at least one occasion, Porcal was assigned to work in Providence, Rhode Island.

11.  Porcal worked on public streets and roads in cities and towns as well as state and federal highways.

12.  Porcal's primary job function was as a jackhammer operator and laborer on these public works paving, repaving, or road repair projects.

13.  Porcal also occasionally worked on union construction projects.  These projects again typically involved the paving, repaving, or repair of streets, roads or highways or appurtenances thereto.

14.  Porcal's employment was seasonal in nature, typically beginning in April or May of each year and concluding in or about November or December each year.  The beginning and end of Ciuffo Construction's work season was dependent upon prevailing weather conditions.

15.  Porcal received his work assignments verbally from Eboli or from various project supervisors employed by Ciuffo Construction which supervisors were appointed and directed by Ciuffo and/or Eboli.

### III.     Hours Worked By Porcal

16.   Porcal was required to report for work at the construction yard for Ciuffo Construction located on Benson Street in Fitchburg, Massachusetts at 4:30 a.m. each work day.

17.   On his arrival at Ciuffo Construction's business premises, Porcal and his co-workers were required to load Ciuffo Construction's trucks with construction materials and supplies which would be necessary to complete their road work that day.   These construction materials and supplies included, but were not necessarily limited to, jackhammers, concrete blocks, bricks, sand, bags of cement, compressors, and various hand tools.

18.   It would take approximately 1 hour for Ciuffo Construction's laborers to load their truck.

19.   From there, Porcal was required to travel in Ciuffo Construction's trucks from Ciuffo Construction's business premises to whatever job site Ciuffo Construction, Eboli, and/or Ciuffo had assigned Porcal to work at that day.

20.   Porcal was expected to report to and begin work at the various projects sites no later than 7:00 a.m. each day, regardless of how far the project site was from Ciuffo Construction's business premises.

21.   Although the exact amount of time Porcal worked at each project site on each day of work varied based on work and weather conditions or the type of project being worked on (work on Massachusetts highways was typically required to be concluded at or around 3:00 p.m., although occasionally Ciuffo Construction's crews would be permitted to work later, while work on roads in cities and towns typically concluded later than highway projects), Porcal typically worked a minimum of 8 hours at each project site for each day of work.

22.   At the conclusion of each work day, Porcal and others assigned to Ciuffo Construction's work crew were expected to dispose of any construction waste generated during the day's

activities at locations specified by Ciuffo Construction or the general contractor in charge of the project before returning the trucks and equipment to Ciuffo Construction's business premises.

23. On a typical day, Porcal would return to Ciuffo Construction's business premises and complete his work shift no earlier than 4:30 p.m. or 5:00 p.m. and, on many days, did not complete his shift until significantly later.

24. Occasionally, work would be shortened due to inclement weather.

25. On a few occasions, work would not be permitted at all due to inclement weather. On these occasions, the Defendants typically followed one of three patterns:

    a. Porcal would be informed the day before that no work would be performed the following day due to inclement weather and that he did not have to report for work the following day;

    b. Porcal would appear at Ciuffo Construction's business premises at 4:30 a.m. for the start of his shift and then be informed that no work would be performed that day due to inclement weather; and

    c. Porcal would appear at Ciuffo Construction's business premises at 4:30 a.m. for the start of his shift; he and other Ciuffo Construction employees would load and prepare Ciuffo Construction's trucks and proceed to the designated project site as normal; once at the designated project site, Ciuffo Construction's work crew would wait for instructions from Ciuffo Construction or the applicable general contractor and, after some period of time at the project site, would be informed that no work would be performed that day due to inclement weather; and

thereafter Porcal and the rest of his work crew would return to Ciuffo Construction's business premises to return the truck and equipment.

26. The Defendants provided no means for Porcal to "clock in" at the beginning of each day, "clock out" at the end of each day, or otherwise record the number of hours Porcal worked in a given day.

27. The practice of Ciuffo Construction was to have the designated supervisor for each work crew verbally report the number of hours worked by each individual employee to Ciuffo or Eboli.

28. The hours reported by the supervisor were to include only the hours employees spent at specific project sites and were not to include time spent loading Ciuffo Construction's trucks each morning, time spent traveling to the assigned work site, time spent off the assigned work site disposing of construction waste materials, time spent returning trucks and equipment to Ciuffo Construction's business premises, or time lost to inclement weather.

29. In addition to the time Porcal spent at various project sites, the time spent each working day by Porcal (a) loading Ciuffo Construction's trucks with equipment and materials to be used during that work day, (b) traveling to his assigned work site each day with the rest of the work crew assembled by Ciuffo Construction, (c) disposing of construction waste materials following the conclusion of work at each project site, and (d) returning Ciuffo Construction's trucks, materials, and construction equipment to Ciuffo Construction's business premises were integral and indispensible parts of the principal business activities of Ciuffo Construction and constituted compensable work time.

30.  Days where Porcal was required to appear for the start of his work shift but work did not proceed due to inclement weather, see Findings Of Fact at ¶ 25(b) and (c), constituted integral and indispensible parts of the principal business activities of Ciuffo Construction and therefore was compensable work time.

31.  The Defendants did not create or maintain true and accurate records of the days worked, hours worked by, wage rates payable to, or wages actually paid to Porcal.

32.  Ciuffo Construction and Ciuffo or Eboli created or completed and signed certain documents entitled "Weekly Payroll Records Report & Statement Of Compliance" ("Certified Payroll Reports") which Defendants furnished to various general contractors and which purported to truthfully and accurately record:

   a.  The identity of Ciuffo Construction's employees who worked on a particular public works construction project in a particular week;

   b.  The date(s) those employees worked on such projects during each week;

   c.  The hours worked each day by each employee;

   d.  The wage rate due to each employee; and

   e.  The wages paid or to be paid to each employee for that particular project and that particular week.

33.  The Certified Payroll Reports did not truthfully or accurately record the number of days Porcal worked each week, the hours worked each day by Porcal, the wage rates payable to Porcal, or the wages actually paid or to be paid to Porcal by Ciuffo Construction.

34.  The Defendants intentionally falsified their Certified Payroll Reports and other wage and hour documents in order to make it appear they were compliant with Massachusetts and Federal wage and hour laws.

7

35. Based on the credible evidence, I find Porcal typically worked from 4:30 a.m. to 5:00 p.m. each day of work and typically worked 5 days each week for an average of 62.5 hours of work each week.

## IV.   Method Of Wage Payments To Porcal

36. Porcal was paid wages weekly on Fridays.

37. Porcal was paid by check.

38. Checks were issued to Porcal from various Ciuffo Construction bank accounts.

39. The checks issued to Porcal did not contain or include any pay slip, check stub, or other document showing the name of the employer, the name of the employee, the day, month, year, number of hours worked, and hourly rate, and the amounts of deductions or increases made for the pay period or the employee's total daily or weekly straight-time earnings or wages due for hours worked during the workday or workweek, exclusive of overtime compensation, total overtime compensation, or the pay period covered by each payment.

40. Porcal was never issued a W-2 form or any other year-end statement of earnings by any of the Defendants.

41. During his employment Porcal was paid at a rate of $18.00 to $22.00 per hour.  Beginning some time in 2008, Porcal was paid at a rate of approximately $22.00 per hour.  In 2007, Porcal was paid at a rate of approximately $20.00 per hour.

42. Porcal's hourly rate of pay never changed based on the particular project he was working on although different public works construction projects required the payment of different prevailing wage rates.

### V.      Wage And Hour Violations

43.   Porcal was never paid any wages for the time spent each morning loading construction equipment and materials on to Ciuffo Construction's trucks, for the time spent traveling to the various projects sites he was assigned to work at, traveling from those work sites to the various locations whereat he would dispose of construction waste generated during each day of work, or time spent traveling from such disposal sites back to Ciuffo Construction's place of business to return Ciuffo Construction's trucks and equipment.

44.   Porcal was never paid any wages for time lost due to inclement weather including, but not limited to, days Porcal was required to report to work but was immediately sent home and days Porcal was required to report to work, spent time preparing Ciuffo Construction's trucks for a regular day of work, reported to the designated work site, but was thereafter told no work would be performed that day.

45.   To the extent Porcal worked on public construction projects within the Commonwealth Of Massachusetts, he was entitled to be paid the applicable prevailing wage rate.

46.   Where the Defendants failed to create or maintain true and accurate records of the hours worked by Porcal including, but not limited to, (a) the number of days each week that Porcal worked, (b) the days or hours Porcal was assigned to work and actually appeared for work but no work was performed due to inclement weather, or (c) the hours Porcal spent (i) loading Ciuffo Construction's trucks each morning, (ii) traveling to the various projects sites he was assigned to work at, (iii) at each work site, (iv) traveling from those work sites to various sites whereat he would dispose of construction waste generated during each day of work, or (v) time spent traveling from such disposal sites back to Ciuffo Construction's

place of business to return Ciuffo Construction's trucks and equipment, such hours must be estimated based on the credible evidence.

47.   Based on the credible evidence before the court, including the records introduced by Porcal, Porcal's testimony, and the testimony of Nuno Fontes Montrond, formerly an investigator with the Commonwealth Of Massachusetts Office Of The Attorney General, Wage And Hour Division, who was responsible for at least one investigation into the Defendants' wage and hour practices, and whose investigation(s) included the personal observation of the activities of Defendants' employees from the beginning to the end of their work day on at least two occasions, the court finds, except in a few work weeks, Porcal generally worked at least 5 days each week and typically worked from at least 4:30 a.m. to 5:00 p.m. each day.

**VI.     Overtime Violations**

48.   Porcal was not exempt from the overtime provisions of the Fair Labor Standards Act or Massachusetts law and, to the extent he worked more than forty (40) hours in any given week, he was entitled to be paid overtime wages.

49.   Porcal was never paid any overtime wages despite typically working more than 40 hours each week of employment.

**VII.    Willfulness**

50.   On or about January 27, 2009 and again on or about March 30, 2009, Porcal filed or caused to be filed a "Prevailing Wage Complaint Form" with the Commonwealth Of Massachusetts Office Of The Attorney General, Fair Labor Division ("Division").

51.   Porcal's Verified Complaint in this matter was filed on January 14, 2010.

52. Porcal's filing of the "Prevailing Wage Complaint Form" triggered an investigation by the Division into the wage and hour practices of Ciuffo Construction, GE Construction, Ciuffo and Eboli which investigation was conducted by Nuno Fontes Montrond ("Montrond").

53. At the conclusion of the Division's investigation, the Division, by and through Montrond, issued four citations charging the Defendants with, in essence, the intentional failure to create and maintain true and accurate certified payroll records on various paving public works projects in Massachusetts between January 1, 2006 and September 1, 2009. Each citation carried a $2,500.00 penalty. The Defendants paid said penalties.

54. The citations were based on Montrond's conclusion that, during the time period covered by the citations, the Defendants were aware of the existence and requirements of Massachusetts' wage and hour laws and intentionally attempted to evade such requirements.

55. The requirements of Massachusetts' wage and hour laws are substantially similar to the requirements of the Fair Labor Standards Act with respect to the payment of regular wages and overtime wages.

56. Defendants never created or maintained true and accurate records of the hours worked by or wages paid to Porcal as required by the Fair Labor Standards Act and Massachusetts wage laws.

57. Defendants deliberately falsified Certified Payroll Reports in order to make it appear they were compliant with Massachusetts and Federal wage and hour laws demonstrating their awareness of the existence and requirements of those laws.

58. Defendants' violation of the Fair Labor Standards Act was willful within the meaning of the Act.

11

### VIII.   Retaliation

59.   In 2008, Porcal complained to Eboli about the wages being paid to Porcal and demanded to be paid at the correct rate of pay.

60.   Shortly thereafter, Ciuffo Construction, by and through Eboli, terminated Porcal's employment.

61.   The termination of Porcal's employment was a direct result of Porcal's complaints to Eboli about the wages and wage rate being paid to Porcal and was retaliatory.

### IX.   Damages

62.   Based on the records in evidence, the average Prevailing Wage rate for laborers on public works construction projects worked on by Porcal between January 14, 2007 and May 30, 2007 was $40.72 per hour.   At that time, Porcal was paid wages at the rate of approximately $20.00 per hour.

63.   Based on the credible evidence, I find Porcal worked an average of 62.5 hours each week. Based on the records in evidence, I find Porcal worked for Defendants for 7 weeks between weeks ending April 20, 2007 and June 1, 2007.  Based on the average number of hours worked each week by Porcal and the average Prevailing Wage rate he should have been paid, Porcal should have been paid $1,628.80 for the first 40 hours of work each week at a rate of $40.72 per hour during this time period, and $1,374.30 for 22.5 hours of overtime wages each week at a rate of $61.08 per hour during this period for total weekly wages of $3,003.10.   For the applicable 7 weeks, Porcal's earnings should have been $21,021.70. During the applicable 7 week period, Porcal was paid $3,417.00.   Accordingly, Porcal's single damages during this time period, to be assessed against Ciuffo Construction, Ciuffo, and Eboli, jointly and severally, are $17,604.70.

64. Based on the records in evidence, the average Prevailing Wage rate for laborers on public works construction projects worked on by Porcal between June 1, 2007 and December 1, 2007 was $41.85 per hour.   At that time, Porcal was paid wages at the rate of approximately $20.00 per hour.

65. Based on the credible evidence, I find Porcal worked an average of 62.5 hours each week. Based on the records in evidence, I find Porcal worked for Defendants for 25 weeks between weeks ending June 8, 2007 and December 14, 2007.   Based on the average number of hours worked each week by Porcal and the average Prevailing Wage rate he should have been paid, Porcal should have been paid $1,674.00 for the first 40 hours of work each week at a rate of $41.85 per hour during this time period, and $1,412.44 for 22.5 hours of overtime wages each week at a rate of $62.775 per hour during this period for total weekly wages of $3,086.44.   For the applicable 25 weeks, Porcal's earnings should have been $77,161.00.   During the applicable 25 week period, Porcal was paid $14,823.00. Accordingly, Porcal's single damages during this time period, to be assessed against Ciuffo Construction, Ciuffo, and Eboli, jointly and severally, are $62,338.00.

66. Based on the records in evidence, the average Prevailing Wage rate for laborers on public works construction projects worked on by Porcal in 2008 was $39.55 per hour.   At that time, Porcal was paid wages at the rate of approximately $22.00 per hour.

67. Based on the credible evidence, I find Porcal worked an average of 62.5 hours each week. Based on the records in evidence, I find Porcal worked for Defendants for a minimum of 3 weeks between the weeks ending May 16, 2008 and May 30, 2008.   Based on the average number of hours worked each week by Porcal and the average Prevailing Wage rate he should have been paid, Porcal should have been paid $1,582.00 for the first 40 hours of

work each week at a rate of $39.55 per hour during this time period, and $1,334.81 for 22.5 hours of overtime wages each week at a rate of $59.325 per hour during this period for total weekly wages of $2,916.81.  For the applicable 3 weeks, Porcal's earnings should have been $8,750.43.  During the applicable 3 week period, Porcal was paid $2,272.00. Accordingly, Porcal's single damages during this time period, to be assessed against Ciuffo Construction, Ciuffo, and Eboli, jointly and severally, are $6,478.43.

68.  Defendants have offered no evidence that their acts or omissions giving rise to this action were in good faith or that Defendants had reasonable grounds for believing their conduct was in compliance with the Fair Labor Standards Act.

## RULINGS OF LAW

### I.    Statutes Of Limitations

1.  Any employee who claims he has not been paid wages when due and in accordance with Mass. Gen. L.c. 149, § 148, may, at least 90 days after filing a complaint with the Commonwealth Of Massachusetts Office Of The Attorney General, and within 3 years after the violation(s), institute and prosecute a civil action for injunctive relief and damages for unpaid wages and benefits.  Mass. Gen. L. c. 149, § 150.

2.  Any employee who claims he has not been paid overtime wages in accordance with Mass. Gen. L. c. 151, § 1A may commence an action to recover same within 2 years after the cause of action accrues.  Mass. Gen. L. c. 151, §§ 1A, 1B and 20A.

3.  An employee whose claim for unpaid overtime is barred by the 2-year statute of limitations under Mass. Gen. L. c. 151, § 20A may assert a claim for unpaid wages under the 3-year statute of limitations found in Mass. Gen. L. c. 149, § 150 and, if successful, recover for

any uncompensated time worked at the employee's regular rate of pay, as well as liquidated damages, the costs of the litigation, and reasonable attorneys' fees.  Mass. Gen. L. c. 151, § 1A; Mass. Gen. L. c. 151, § 20A; Mass. Gen. L. c. 149, § 150; and <u>Mogilevsky v. Bally Total Fitness Corp.</u>, 263 F. Supp. 2d 164, 169-170 (D. Mass. 2003).

4.   In the construction of any public works by the Commonwealth Of Massachusetts, or by any county, town, authority, district, or other political subdivision thereof, the rates of wages and benefits to be paid to laborers are to be determined by the Commonwealth Of Massachusetts Department Of Labor, formerly known as the Executive Office Of Labor And Workforce Development, Division Of Occupational Safety.  Mass. Gen. L. c. 149, §§ 26 and 27.  This wage rate is known as the "Prevailing Wage" rate.

5.   A "Public Works Project" is defined as "[a]ny construction, maintenance or other work activity performed by or on behalf of an Awarding Authority within the limits of or impacting traffic on a Public Road."  701 CMR 7.02.  An "Awarding Authority" is "[a]ny Commonwealth or municipal entity, authority, commission or other public entity or governmental body that awards a contract to work, when such work is within the limits of, or impacts traffic on, any Public Road."  <u>Id</u>.  A "Public Road" is "[a]ny highway, turnpike, limited access highway, divided highway, access road, parkway, bridge, path, public way or private way that is open to or is otherwise used for public vehicular travel in the Commonwealth of Massachusetts.  <u>Id</u>.

6.   An employee who claims he was not paid the appropriate Prevailing Wage rate may, at least 90 days after the filing of a complaint with the Commonwealth Of Massachusetts Office Of The Attorney General, and within 3 years of the alleged violation, institute and

prosecute a civil action for injunctive relief, for any damages incurred, and for any lost wages and other benefits.  Mass. Gen. L. c. 149, § 27.

7.     An action to recover unpaid minimum wages, unpaid wages, or unpaid overtime wages under the Fair Labor Standards Act must be commenced within 2 years after the cause of action accrued except that a cause of action arising out of a willful violation may be commenced within 3 years after the cause of action accrued.  29 U.S.C. § 255(a).

8.     The employer bears the burden of proving that its actions were not "willful" within the meaning of the Fair Labor Standards Act.  29 U.S.C. § 260.

9.     A "willful" violation of the Fair Labor Standards Act may be shown, "where the employer knew that its conduct was prohibited by the Act or showed reckless disregard for the requirements of the Act."  29 CFR 578.3(c)(1).  Conduct "shall be deemed knowing … if the employer received lawful advice from a responsible official of the Wage and Hour Division to the effect that the conduct in question is not lawful."  29 CFR 578.3(c)(2). "[A]n employer's conduct shall be deemed to be in reckless disregard of the requirements of the Act … if the employer should have inquired further into whether its conduct was in compliance with the Act, and failed to make adequate further inquiry."   29 CFR 578.3(c)(3).  See, also, McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988).

10.    Evidence of willfulness can include, but is not limited to, the intentional and repeated failure to keep accurate records of time worked by employees, disguising minimum wage and overtime pay violations, failure to record cash payments to employees and failing to properly record wage payments to employees.  Chao v. Hotel Oasis, Inc., 493 F.3d 26, 35 (1st. Cir. 2007) (Defendants' "failure to keep adequate payroll records and its intentional

manipulation of the records it did keep are sufficient grounds for concluding that Oasis did not act in good faith or with a reasonable belief that it was in compliance with the FLSA").

## II.   Burdens Of Proof & Permissible Inferences

11.   "An employee who brings suit under § 16(b) of the [Fair Labor Standards Act] for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-687 (1946). Where an employer fails to create or maintain legally required and accurate records documenting the wages, hours, and other conditions of employment, "an employee has carried out his burden if he proves that he has in fact performed work for which he was not properly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative [sic] the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." Id. at 687-688.

12.   To prove a violation of the Fair Labor Standards Act, an employee is not required to produce actual records or logs documenting the hours worked but may establish the amount of time worked, including overtime hours, through their own testimony. Bueno v. Mattner, 829 F.2d 1380 (6th Cir. 1987).

13.   "'In a civil action, a reasonable inference adverse to a party may be drawn from the refusal of that party to testify on the grounds of self-incrimination.'" Wansong v. Wansong, 395

Mass. 154, 157 (1985) (quoting <u>Labor Relations Commission v. Fall River Educators Association</u>, 382 Mass. 465, 471 (1981)). <u>See</u>, <u>also</u>, <u>Frizado v. Frizado</u>, 420 Mass. 592, 596 (1995) ("The fact that the defendant may refuse to testify on the ground of self-incrimination does not bar the taking of an adverse inference") and <u>Lentz v. Metropolitan Property & Casualty Ins. Co.</u>, 2001 Mass. App. Div. 52, 54 (2001), <u>aff'd</u>, 437 Mass. 23 (2002) ("Massachusetts courts have also recognized in civil actions that a reasonable inference adverse to a party may be drawn from the refusal of a party, an employee of a party, or an officer of a corporate party to testify on the grounds of self-incrimination").

### III.   Defendants As "Employers"

14.   To "employ" means to suffer or permit to work.  29 U.S.C. § 203(g).

15.   An "employer" under the Fair Labor Standards Act includes any person acting directly or indirectly in the interest of an employer in relation to an employee.  29 U.S.C. § 203(d).

16.   In determining whether or not an individual may be personally liable as an "employer" under the Fair Labor Standards Act for the wage practices of a corporate defendant, a court must consider, among other factors, "the individual's ownership interest, degree of control over the corporation's financial affairs and compensation practices, and role 'in causing the corporation to compensate (or not to compensate) employees in accordance with the FLSA."  <u>Chao v. Hotel Oasis, Inc.</u>, 493 F.3d 26, 34 (1st Cir. 2007) (quoting <u>Baystate Alternative Staffing, Inc. v. Herman</u>, 163 F.3d 668 (1st Cir. 1998)).

17.   An "employer" under Massachusetts wage laws includes any individual, corporation, partnership or other entity, including any agent thereof, that engages the services of an employee or employees for wages, remuneration, or other compensation.  455 CMR 2.01.

18. The president and treasurer of a corporation and any officers or agents responsible for the management of a corporation are "employers" within the meaning of the Massachusetts prevailing wage laws and minimum fair wage laws.  Mass. Gen. L. c. 149, §§ 27 and 148.

**IV.   Applicability Of The Fair Labor Standards Act And Massachusetts Wage And Hour Laws**

19. An "employee" is any person employed by an employer.  29 U.S.C. § 203(e)(1).

20. The Fair Labor Standards Act is applicable to any employee who works for an "enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. §§ 206(a), 207(a)(1), and 211(c).

21. Massachusetts minimum fair wage laws apply to "[e]very person having employees in [their] service."  Mass. Gen. L. c. 149, § 148.

22. The Massachusetts prevailing wage laws are applicable to all mechanics and apprentices, teamsters, chauffeurs and laborers working on the construction of public works by the commonwealth, or by any county, town, authority or district, and to any persons or entities contracting or subcontracting for such works within the Commonwealth Of Massachusetts.  Mass. Gen. L. c. 149, § 26.

**V.   Wage And Hour Law Violations – Straight Time**

23. Employers in the Commonwealth Of Massachusetts are required to pay all wages due to their employees either weekly or bi-weekly and within six days of the termination of the pay period in which the wages were earned if the employee is employed for five or six days in a calendar week, or within seven days of the termination of the pay period during which the wages were earned if the employee works less than five days in a calendar week.  Mass. Gen. L. c. 149, § 148.

24. On any contract for the construction of public works, any public official or public body whose duty it is to cause such public works to be constructed is required to submit a list of the several jobs usually performed on such works by mechanics and apprentices, teamsters, chauffeurs and laborers to the Commissioner of the Commonwealth Of Massachusetts Department Of Labor ("Commissioner") and the Commissioner, in turn, is to determine the rate of wages to be paid on each job which rates are to be incorporated into the contract for construction by the public official or public body.  Mass. Gen. L. c. 149, § 27.  The wage rates determined by the Commissioner and, if necessary, annually updated, constitute the minimum wage rates to be paid to said mechanics and apprentices, teamsters, chauffeurs and laborers during the life of the contract.  Id.

25. All time an employee is required to be on the employer's premises, or on duty, or at a prescribed work site, and any time worked before or beyond the end of a normal shift to complete the employer's work constitutes "working time" for which an employee must be paid wages.  455 CMR 2.01.

26. The test for whether or not conduct constitutes compensable employment is whether or not the activity is performed, at least in part, for the benefit of the employer.  Herman v. Hector I. Nieves Transport, Inc., 91 F. Supp. 2d 435, 447 (D.P.R. 2000).  "Employment activities may include acts 'performed either before or after the regular work shift, on or off the [road], if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by section 4(a)(1) of the [Portal-to-Portal Act, 29 U.S.C. §§ 251-262 (1994)].'"  Id. at 447-448 (quoting Steiner v. Mitchell, 350 U.S. 247, 256 (1956)).

27. An employee scheduled to work 3 or more hours that reports for work but is not provided with the expected or anticipated hours of work must be paid for at least 3 hours of work at no less than the basic minimum wage.  455 CMR 2.03(1).

28. An employee required to travel from one place to another after the beginning or before the close of a work day shall be compensated for all travel time.  455 CMR 2.03(4)(b).

29. In making payments of wages to employees, an employer is required to furnish the employee with a pay slip, check stub, or other document showing the name of the employer, the name of the employee, the day, month, year, number of hours worked, and hourly rate, and the amounts of deductions or increases made for the pay period.  Mass. Gen. L. c. 149, §§ 148 and 150A.  See, also, 455 CMR 2.06(2).

30. In addition, employers are also required to furnish their employees with a record showing the employee's total daily or weekly straight-time earnings or wages due for hours worked during the workday or workweek, exclusive of overtime compensation; total overtime compensation; the total wages paid each pay period; and the date of payment and the pay period covered by each payment.  29 CFR 516.2(a).

31. Every employer required to deduct and withhold payroll taxes under 26 U.S.C. § 3402 must furnish a Form W-2 to every employee from whom such deductions and withholdings are made which Form W-2 must show the name, address, and identification number of the employer; the name, address, and social security number of the employee; the total amount of wages as defined in 26 U.S.C. 3401(a); the total amount deducted and withheld under 26 U.S.C. § 3402; the total amount of wages as defined in 26 U.S.C. § 3121(a); the total amount of employee tax deducted and withheld under 26 U.S.C. § 3101; information concerning the coverage earned by the employee under the Federal Insurance Contributions

Act; and the total amount paid to the employee under 26 U.S.C. § 3507.  26 CFR 31.6051-1(a).

### VI.    Wage And Hour Law Violations – Overtime

32.  The Fair Labor Standards Act and Massachusetts Minimum Fair Wage Laws require employers to pay employees a wage rate of at least one and one-half times their regular rate of pay for any time worked in any one work week in excess of 40 hours.  Mass. Gen. L. c. 151, § 1A and 29 U.S.C. § 207(a)(1).

### VII.    Retaliation

33.  An employer who discharges any employee because such employee complained about a violation of the Massachusetts Minimum Fair Wage laws, or has testified or is about to testify in any proceeding concerning same is liable for damages of not less than one month's wages of such employee, plus the costs of the litigation and reasonable attorneys' fees.  Mass. Gen. L. c. 151, § 19.

34.  It is a violation of the Fair Labor Standards Act for any employer to discharge or in any other manner discriminate against an employee because the employee has filed a complaint or instituted or caused to be instituted any proceeding under or related to the Fair Labor Standards Act.  29 U.S.C. § 215(a)(3).

### VIII.   Damages

35.  Any employee who prevails in an action for unpaid wages under the Massachusetts Minimum Fair Wage laws must be awarded treble damages, as liquidated damages, for any lost wages and other benefits and the costs of the litigation and reasonable attorneys' fees. Mass. Gen. L. c. 149, § 150.

36. Under Massachusetts law, an employee is entitled to treble damages, as liquidated damages, for lost or unpaid overtime compensation as well as the costs of the litigation and reasonable attorneys' fees for any overtime wages which accrued within two years before the filing of a complaint seeking recovery of such wages.  Mass. Gen. L. c. 151, §§ 1B and 20A.

37. Any employee who recovers unpaid prevailing wages is entitled to treble damages, as liquidated damages, the costs of litigation, and reasonable attorneys' fees.  Mass. Gen. L. c. 149, § 27.

38. An employee who recovers wages under the Fair Labor Standards Act is entitled to recover unpaid wages plus an additional equal amount as liquidated damages, costs of the litigation, and reasonable attorneys' fees.  29 U.S.C. § 216(b).

39. An employer may avoid liquidated damages under the Fair Labor Standards Act only on a showing that its conduct was in good faith and that the employer had reasonable grounds to believe it was acting in compliance with the Act.  29 U.S.C. § 260.  "'To carry [its] burden, a defendant employer must show that [it] took affirmative steps to ascertain the [FLSA] requirements, but nonetheless, violated its provisions.' …  This burden is 'difficult to meet,' as double damages are the norm, single damages the exception."  Reich v. Newspapers of New England, Inc., 834 F. Supp. 530, 542 (D. NH 1993) (quoting Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907 (3rd Cir. 1991)).

MAURICIO PORCAL
By his attorneys,


Date:   01/08/2013              /s/ James N. Worden
                                                   Francis A. Shannon, III, Esq.
                                                   BBO # 560651
                                                   fashannon@shannonlawassociates.com
                                                   James N. Worden, Esq.
                                                   BBO # 647040
                                                   jnworden@shannonlawassociates.com
                                                   Shannon Law Associates, Inc.
                                                   300 Crown Colony Drive, Suite 504
                                                   Quincy, MA  02169
                                                   (617) 479-1313

## CERTIFICATE OF SERVICE

      I, the undersigned, hereby certify that I served a true copy of the above document upon all parties with an interest in this matter by electronically filing through this Court's CM/ECF filing system, this 8th day of January, 2013:

                                                   /s/ James N. Worden
                                                   Francis A. Shannon, III, Esq.
                                                   James N. Worden, Esq.

6009:002:findingsandrulings

24