UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MAURICIO PORCAL,<br><br>        Plaintiff,<br>v.<br><br>LINA CIUFFO, GUSTAVO EBOLI,<br>LINA CIUFFO CONSTRUCTION CORP., and<br>G.E. CONSTRUCTION, INC.,<br><br>        Defendants. | CIVIL ACTION NO.<br>10-cv-40016-TSH |

**OPINION AND ORDER**
August 1, 2013

HILLMAN, District Judge.

**Introduction**

Plaintiff Mauricio Porcal ("Mr. Porcal") has sued his former employers, Lina Ciuffo ("Ms. Ciuffo"), Gustavo Eboli ("Mr. Eboli"), Lina Ciuffo Construction Corporation ("Ciuffo Construction") and G.E. Construction, Inc. ("G.E. Construction") (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act under 29 U.S.C. § 201, *et seq.* ("FLSA") and Massachusetts wage and overtime laws under MASS. GEN. LAWS ch. 149, § 148 (prevailing wages) and ch. 151, §§ 1A, 1B and 19 (overtime). Specifically, Mr. Porcal asserts that Defendants repeatedly failed to pay him a salary for every hour he worked, failed to pay him at prevailing wage rates for work on publicly financed projects, failed to pay him overtime and retaliated against him after he sought proper payment. After holding a three-day bench trial between December 11-12, 2012 and January 11, 2013, the Court took the present matter under

advisement (Docket Nos. 56-57, 66). Accordingly, for the following reasons, Defendants are hereby jointly and severally liable for violating the FLSA and Massachusetts wage and overtime laws and must remit to Mr. Porcal damages for work performed in the sum of $242,921.40 plus applicable costs and attorneys' fees.

## Findings of Fact

### 1. The Parties

Mr. Porcal is a 47 year-old Uruguayan immigrant who resides in Leominster, Massachusetts. Compl. ¶ 1. Ms. Ciuffo resides in Leominster and actively manages and controls Ciuffo Construction as its President. *Id.* ¶¶ 2, 4; Answer ¶ 9. Mr. Eboli resides in Leominster and actively manages and controls Ciuffo Construction as its Treasurer and G.E. Construction as its President, Treasurer and Secretary. Compl. ¶¶ 3, 5; Answer ¶ 9. Ciuffo Construction and G.E. Construction are Massachusetts corporations with principal places of business in Leominster. Compl. ¶¶ 2-3, 9; Answer ¶ 9. Although the record remains undeveloped as to the connection between Ciuffo Construction and G.E. Construction and whether G.E. Construction employed Mr. Porcal, G.E. Construction coincidentally maintains the same address in Leominster as Ms. Ciuffo. Compl. ¶¶ 3-4. Nevertheless, for the purposes of this Order and Opinion, the Court focuses only on liability attributable to Ciuffo Construction, Ms. Ciuffo and Mr. Eboli.

### 2. Mr. Porcal's Employment

#### a. The Business

Ciuffo Construction operates as a subcontractor on public works projects throughout the Commonwealth. Plaintiff's Proposed Findings of Fact ("Pl.'s PFF") ¶ 9. Between 2002 and 2008, Mr. Porcal worked as a jackhammer operator and general laborer for Ciuffo Construction. *Id.* ¶ 12; Compl. ¶¶ 6-7. Specifically, Ciuffo Construction removes surface asphalt and raises and

adjusts underlying sewer structures on public roads and highways to prepare them for repaving.[1] Pl.'s PFF ¶¶ 9, 13. Mr. Porcal's employment at Ciuffo Construction could be characterized as "seasonal," i.e., work seasons on public works projects began in the spring and ended in the late fall or early winter. *Id.* ¶ 14.

### b. Hours

Mr. Porcal was expected to report to Ciuffo Construction's "yard" five days a week by 4:30 AM to load materials; travel and begin operations at work sites by 7:00 AM; and finish, unload and clean materials back at the yard by 5:00 PM. *Id.* ¶¶ 14, 16-23. Although work on public roads and highways within the Commonwealth typically ended at or around 3:00 PM, often Ciuffo Construction was permitted to work later. *Id.* ¶ 21. Sometimes work was delayed, dismissed or cancelled due to inclement weather. *Id.* ¶¶ 24-25. Ciuffo Construction never required Mr. Porcal to "clock in" and "clock out" at the beginning and end of each workday nor did it provide the means for doing so. *Id.* ¶ 26. Rather, Ciuffo Construction designated supervisors, like Mr. Eboli, to record and report the number of hours that employees worked on job sites. *Id.* ¶ 27. Ciuffo Construction only recorded the hours Mr. Porcal spent on specific project sites and failed to include the time spent loading and off-loading materials at the yard and traveling to and from such sites. *Id.* ¶¶ 28, 43. Nevertheless, this preparation time was an integral and indispensible piece of Ciuffo Construction's business activities. *Id.* ¶ 30.

Even assuming delays, cancellations, and early releases, Mr. Porcal worked approximately twelve-hour days, five days a week, for ten months of the year. *Id.* ¶¶ 24-25, 35. Mr. Porcal was not exempted from the overtime provisions under the FLSA or MASS. GEN. LAWS ch. 151, § 1A. *Id.* ¶ 48.

---

[1] Some of the municipalities where Mr. Porcal worked while employed by Ciuffo Construction included, but were not limited to: Billerica, Boston, Braintree, Chelmsford, Hopkinton, Lunenburg, Melrose, Milton, Peabody, Phillipston, Providence, R.I., Quincy, Saugus, Somerville, Templeton, Waltham and Worcester. Pl.'s PFF ¶ 10.

### c. <u>Wages</u>

Mr. Porcal was paid weekly wages with checks issued from Ciuffo Construction's bank accounts. *Id.* ¶¶ 36-38. During his tenure at Ciuffo Construction, Mr. Porcal was paid an hourly rate between $18.00 and $22.00 per hour regardless of whether the work was performed on a public or private project. *Id.* ¶¶ 41-42. The Commonwealth is responsible for setting the prevailing wage rates for all laborers on public works projects. *Id.* ¶ 42.

Mr. Porcal was never paid at the prevailing wage rate for public works projects set by the Commonwealth. *Id.* ¶ 45. Ciuffo Construction's pay checks failed to include information on the number of hours that Mr. Porcal worked, the hourly wage rate, the overtime wage rate, and any employment deductions contained therein. *Id.* ¶ 39. Mr. Porcal testified that he never received overtime pay while employed by Ciuffo Construction, despite routinely working more than forty hours per week. *Id.* ¶ 49. Ciuffo Construction never issued Mr. Porcal a W-2 or a year-end statement of earnings. *Id.* ¶ 40. Ciuffo Construction never paid Mr. Porcal wages for his time spent every morning loading and unloading equipment and materials at the yard, traveling to and from work sites, working beyond prescribed times on public projects, and any time lost due to inclement weather. *Id.* ¶¶ 43-45.

### 3. <u>Violations</u>

Between April 20, 2007 and June 1, 2007, Mr. Porcal worked on public works projects where the minimum prevailing wage was set at $40.72 per hour. *Id.* ¶¶ 62-63. Defendants paid Mr. Porcal at a wage rate of $20.00 per hour and he received only $3,417.00. *Id.* ¶ 62. Assuming Mr. Porcal worked his usual twelve-hour days over this seven-week period, Mr. Porcal should have been paid $19,952.80 including overtime. Accordingly, if a violation were found, Defendants would be liable for $16,525.80 in outstanding wages to Mr. Porcal.

Between June 8, 2007 and December 14, 2007, Mr. Porcal worked on public works projects where the minimum prevailing wage was set at $41.85 per hour. *Id.* ¶¶ 64-65. Defendants paid Mr. Porcal at a wage rate of $20.00 per hour and he received only $14,823.00. *Id.* ¶ 65. Assuming Mr. Porcal worked twelve-hour days over this twenty-five week period, Mr. Porcal should have been paid $73,237.50 including overtime. Accordingly, if a violation were found, Defendants would be liable for $58,414.50 in outstanding wages to Mr. Porcal.

For the period between May 15, 2008 and May 30, 2008, Mr. Porcal worked on public works projects where the minimum prevailing wage was set at $39.55 per hour. *Id.* ¶¶ 66-67. Defendants paid Mr. Porcal at a wage rate of $22.00 per hour and he received only $2,272.00. *Id.* ¶ 67. Assuming Mr. Porcal worked twelve-hour days over this three-week period, Mr. Porcal should have been paid $8,305.50 including overtime. Accordingly, if a violation were found, Defendants would be liable for $6,033.50 in outstanding wages to Mr. Porcal.

In order to qualify to bid on public works projects, Ciuffo Construction was required to accurately record "certified payroll reports" that would identify: 1) which Ciuffo Construction employees worked on a particular project; 2) the dates worked; 3) the total hours worked; 4) the wage rate due to each employee; and 5) the wages paid or to be paid to each employee for that project. *Id.* ¶ 32. Ciuffo Construction failed to keep truthful and accurate certified payroll reports by falsifying hours and wages in order to appear in compliance with these regulations. *Id.* ¶¶ 33-34. As a result, both Ms. Ciuffo and Mr. Eboli were individually investigated, cited and fined by the Massachusetts Attorney General's Fair Labor Division for intentionally violating prevailing wage and overtime laws from January 1, 2006 until July 1, 2009. *Id.* ¶¶ 47, 50-51; *see also* Trial Exhibit Nos. 5-6. It is undisputed that Mr. Porcal's alleged damages fall within this period. Furthermore, on April 28, 2011, this Court sanctioned the Defendants for spoliating Ciuffo

Construction's employment records during discovery in the present litigation. (Docket Nos. 31, 42).

## Discussion

Before addressing the substantive claims at bar, the Court notes that the record is devoid of any evidence demonstrating that the Defendants ever recorded accurate hours or paid appropriate wages for the periods during which Mr. Porcal worked while employed at Ciuffo Construction. Aggrieved employees suing for unpaid wages carry the initial burden of demonstrating that they actually performed the work for which they allege. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *superseded by statute on other grounds as recognized in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972). This burden need only be satisfied by a preponderance of the evidence and an employee's own testimony is sufficient to meet this burden. *See Bueno v. Mattner*, 829 F.2d 1380, 1387 (6th Cir. 1987).

"Because the employer, and not the employee, is in the best position to keep accurate employment records for each of its employees, once an employee has proved that he or she has performed work for which he or she was not compensated," *Escobedo v. Dynasty Insulation, Inc.*, 694 F. Supp. 2d 638, 647 (W.D. Tex. 2010), the burden then shifts to the employer to rebut the employee's claims with viable evidence, such as accurate payroll reports, that demonstrate "the precise amount of work performed." *Anderson*, 463 U.S. at 687-88; *see also Sec'y of Labor v. DeSisto*, 929 F.2d 789, 792 (1st Cir. 1991). If the employer cannot produce rebuttal evidence, the court may award approximate damages in favor of the employee.[2] *Anderson*, 328 U.S. at

---

[2] With respect to an employer's accurate record keeping, the FLSA states in relevant part:
> [e]very employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

687-88. Furthermore, where, as here, an employer alleges that an employee's estimation of hours and wages are inaccurate,

> [t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had [it] kept records in accordance with the requirements of . . . the [FLSA]. And even where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances.

*Id.*

During the bench trial, Defendants presented no evidence to support their contentions. They were given the opportunity to rebut the allegations set forth by the evidence in record and the testimony of Mr. Porcal and other witnesses. Rather than testifying, Ms. Ciuffo and Mr. Eboli repeatedly refused to answer the interrogatories presented to them by Mr. Porcal's counsel by invoking their Fifth Amendment protection against self-incrimination. While they were within their rights to invoke such a privilege, "[i]n a civil action, a reasonable inference adverse to a party may be drawn from the refusal of that party to testify on the grounds of self-incrimination." *Quintal v. Comm'r of Dept. of Employment and Training*, 418 Mass. 855, 861 (1994) (quoting *Labor Relations Comm'n v. Fall River Educators' Ass'n*, 382 Mass. 465, 471 (1981)). Moreover, it remains within the purview of the trial judge to place a "particular significance" on a party's failure to testify in a civil matter. *McGinnis v. Aetna Life & Cas. Co.*, 398 Mass. 37, 39 (1986).

### 1. **FLSA**

Typical actions to recover unpaid wages under the FLSA must be instituted by an aggrieved employee within two years from when the cause of action accrued. 29 U.S.C. § 255. An "employee" under the FLSA is any person employed by an employer. *Id.* § 203(e)(1). An

---

29 U.S.C. § 211(c); *see also* 29 C.F.R. §§ 516.2(a)(7) (mandating that employers maintain and preserve payroll records), 516.6(a)(1) (mandating that employers preserve such records for at least two years).

"employer" under the FLSA "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d). The FLSA applies to employees working for an "enterprise engaged in commerce or in the production of goods for commerce." *Id.* §§ 206(a), 207(a)(1). In determining an employer's individual liability under the FLSA, courts consider "the individual's ownership interest, degree of control over the corporation's financial affairs and compensation practices, and role in 'caus[ing] the corporation to compensate (or not to compensate) employees in accordance with the FLSA.'" *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007) (quoting *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 678 (1st Cir. 1998)).

Employers must pay employees an overtime wage rate of at least one and one-half times their regular wage rate. *Id.* § 207(a)(1). Employers must provide their employees with a pay slip or check stub that lists the employer's name, employee's name, day, month, year, hours worked and hourly wage rate regardless of regular time or overtime, and any employment and payroll taxes deducted therein. 29 C.F.R. § 516.2(a).  Employers must also present their employees with a W-2 form outlining such deductions. 26 U.S.C. §§ 3101 (rate of tax), 3402 (employment deductions).

An employer violates the FLSA if its failure to comply with the provisions enumerated therein was "willful," i.e., the employer acted either knowingly or with reckless disregard for the FLSA's requirements. 29 C.F.R. § 578.3(c)(1). "[C]onduct shall be deemed knowing . . . if the employer received advice from a responsible official of the Wage and Hour Division to the effect that the conduct in question is not lawful." *Id.* § 578.3(c)(2). "[C]onduct shall be deemed to be in reckless disregard of the requirements of the [FLSA] . . . if the employer should have inquired further into whether its conduct was in compliance with the [FLSA], and failed to make adequate

further inquiry." *Id.* § 578.3(c)(3). Under the FLSA, employees may recover back pay and an amount equal to that reward as liquidated damages, costs and attorneys' fees. 29 U.S.C. § 216(b). Nevertheless, employers carry the burden of proving that their actions were not "willful," but rather, in "good faith" due to their "reasonable" belief that their actions did not violate the FLSA. 29 U.S.C. § 260.

Here, considering the weight of the evidence presented by Mr. Porcal and the complete lack thereof presented by Defendants, there is no question that the Defendants willfully violated the FLSA. The Defendants' pervasive and continuous failure to maintain accurate records of the hours and wages worked by Mr. Porcal, the sanctions imposed by both the Commonwealth and this Court, as well as Ms. Ciuffo and Mr. Eboli's refusal to testify, solidify this Court's ultimate finding that the Defendants are liable for the violations alleged. Accordingly, for the reasons set forth above, the Defendants are jointly and severally liable for willfully violating the FLSA.

**2. Massachusetts Fair Wage and Overtime Laws**

In effect, the fair wage and overtime provisions under both the FLSA and Massachusetts Law are "nearly identical." *Cash v. Cycle Craft Co.*, 508 F.3d 680, 686 (1st Cir. 2007) (quoting *Goodrow v. Lane Bryant, Inc.*, 432 Mass. 165, 175 (2000)). The purpose of the Massachusetts Wage Act was "to protect wage earners from the long-term detention of wages by unscrupulous employers as well as protect society from irresponsible employees who receive and spend lump sum wages." *Melia v. Zenhire, Inc.*, 432 Mass. 164, 170 (2012) (quoting *Cumpata v. Blue Cross Blue Shield of Mass., Inc.*, 113 F. Supp. 2d 164, 167 (D. Mass. 2000)). Under the Wage Act, individual civil liability may attach to the "president and treasurer of a corporation and any

officers or agents having the management of such corporation."[3] MASS. GEN. LAWS ch. 149, § 148; ch. 151, §§ 1B, 19. Aggrieved employees seeking a private right of action for lost wages have a three year statute of limitation period that accrues from the date of the alleged violation. *Id.* ch. 149, § 27. Laborers, specifically those performing construction on public works projects, are not excluded from Massachusetts wage and overtime laws. *Id.* §§ 26, 148.

Massachusetts overtime laws apply to employees working more than forty hours per week and "aim[] to reduce the number of hours of work, encourage the employment of more persons, and compensate employees for the burden of a long workweek." *Mullally v. Waste Mgmt. of Mass., Inc.*, 452 Mass. 526, 531 (2008). Employers must pay employees an overtime wage rate of at least one and one-half times their regular wage rate. MASS. GEN. LAWS ch. 151, § 1A. Employers must give their employees a pay slip or check stub that lists the employer's name, employee's name, day, month, year, hours worked and hourly wage rate regardless of regular time and overtime, and any employment tax or payroll deductions. *See* MASS. GEN. LAWS ch. 149, §§ 148, 150A.

Unlike the FLSA, violations of the Massachusetts Wage Act are subject to treble damages. *Id.* § 150. While it is true that "treble damages are punitive in nature," *Wiedmann v. The Bradford Group, Inc.*, 444 Mass. 698, 710 (2005), where, as here, a court finds a violation to have occurred, treble damages are mandatory pursuant to statute. *See Melia*, 462 Mass. at 171 n.8 (noting the Supreme Judicial Court's overruling of its decision in *Wiedmann*). Considering the weight of the evidence presented before me at trial and for the identical reasons set forth in Section 1 of this Part, I find the Defendants liable for violating the Massachusetts wage and

---

[3] Recently, the Supreme Judicial Court has recognized the breadth of application of this statute, holding that other types of business entities besides the "corporation" fall under this Act. *See, e.g.*, *Cook v. Patient Edu, LLC*, 465 Mass. 548, 556 (2013) (noting the Wage Act's applicability to LLCs).

overtime laws in the three instances that Mr. Porcal has alleged. Moreover, in accordance with statute, Mr. Porcal's damages, amounting to $80,973.80 in unpaid wages, are therefore trebled.

## **Conclusion**

For the reasons set forth above, Defendants are hereby jointly and severally liable for violating the FLSA and Massachusetts wage and overtime laws and must remit to Mr. Porcal damages for work performed in the sum of $242,921.40 plus applicable costs and attorneys' fees.

It is so ORDERED.

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**